UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERVIN JOSEPH LAMIE, JR.,           )
                                   )
                    Plaintiff,     )        Case No. 1:12-cv-1299
                                   )
v.                                 )        Honorable Paul L. Maloney
                                   )
PAUL WRIGHT, et al.,               )
                                   )        **REPORT AND RECOMMENDATION**
                    Defendants.    )
_____)


        This is one of a seemingly never-ending series of lawsuits brought by Ervin Joseph

LaMie, Jr. against family members and others involving real estate owned by his parents, Ervin

Joseph LaMie, Sr. and Muriel LaMie. Plaintiff has lost in at least two state-court lawsuits and three

federal lawsuits, all of which involved plaintiff's claim of an interest in real estate located on Taft

Road in Nunica, Michigan, or Wilson Road in Fruitport, Michigan. Judges of this court have entered

final judgments against plaintiff in three previous cases. Undeterred, plaintiff initiated the present

lawsuit, naming as defendants Muriel D. LaMie (his mother), David W. LaMie (his brother), Pamela

Sue and Greg Smith (his sister and brother-in-law), and Paul Wright and Rachel Cereska (employees

of PW Services, Inc., a professional fiduciary that acted as conservator for plaintiff's parents in

previous Muskegon County Probate Court proceedings). Plaintiff also named Fifth Third Bank and

Federal Home Loan Mortgage Corporation (Freddie Mac), the entities that were involved in

foreclosing on the Wilson Road real estate after plaintiff's father failed to make mortgage payments.

Fifth Third Bank has been dismissed by stipulation. (docket # 74). Freddie Mac, pointing out that

plaintiff has lost two previous federal lawsuits concerning the Wilson Road property, has filed a motion to dismiss this action on grounds of *res judicata*. (Motion, docket # 70). In a supplemental motion responding to the amended complaint (docket # 98), Freddie Mac raises the additional defenses of the *Rooker-Feldman* doctrine and failure to state a claim.

Plaintiff's family members Muriel LaMie, Davie LaMie, Greg Smith, and Pamela Sue Smith have filed motions to dismiss for failure to state a claim (docket #s 25, 96) and two motions for summary judgment (docket #s 75, 92), as well as motions for sanctions (docket #s 53, 102). The first dismissal motion (docket # 25) challenges plaintiff's standing to assert claims on behalf of his father's estate. The summary judgment motions assert the defense of *res judicata* arising from previous adjudications as well as failure to state a claim.[1]

By order of reference entered November 29, 2012, Chief Judge Paul Maloney referred this case to me for all pretrial purposes, including the issuance of a report and recommendation on dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record in this and previous cases, I conclude that plaintiff's claims against Freddie Mac involving the Wilson Road property are clearly barred by *res judicata*. The remaining claims fail to state a claim for relief. I recommend that Freddie Mac's motion to dismiss be granted. I further conclude that plaintiff's claims against his family members are barred by prior judgments or fail to state a claim against them and should be dismissed.

---

[1] Additionally, because plaintiff is proceeding *in forma pauperis*, the court has *sua sponte* authority to dismiss claims that are frivolous, fail to state a claim upon which relief may be granted, or are asserted against a clearly immune defendant. 28 U.S.C. § 1915(e)(2).

## Applicable Standard

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2)). While this notice pleading standard does not require "detailed" factual allegations, it does require more than the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Courts are not required to conjure up unpleaded allegations, nor accept unwarranted factual inferences. *See Total Benefits Planning*, 552 F.3d at 434. "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)

(quoting *Twombly*, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678). "A plaintiff falls short if [] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

In general, when adjudicating a motion to dismiss under Rule 12(b), the court is limited to examination of the face of plaintiff's well-pleaded complaint. This rule, however, is subject to exceptions. The Sixth Circuit routinely authorizes review of a *res judicata* defense on motion to dismiss under Rule 12(b)(6). *See, e.g., Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011); *Daubenmire v. City of Columbus*, 507 F.3d 383, 387-89 (6th Cir. 2007). This is because the district court can take judicial notice of other court proceedings without converting a motion to dismiss to a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir. 2010).

**Proposed Findings of Fact**

**A.     Allegations in Amended Complaint**

Ervin Joseph LaMie, Jr. initiated this action by filing a complaint *in forma pauperis* on November 27, 2012.  The original complaint was purportedly brought on plaintiff's own behalf and on behalf of the estate of his father, Ervin Joseph LaMie, Sr., who at the time was still living.  The complaint contained twelve counts, all of which pertained to two parcels of real property in Michigan, real property in Dyer County, Tennessee, or defendants' alleged misdeeds in prosecuting or defending previous litigation among the parties in the state and federal courts.  Plaintiff predicated subject-matter jurisdiction on both diversity of citizenship and federal-question, as he purported to raise RICO claims.

In response to the original complaint, then defendant Fifth Third Bank moved to dismiss (docket # 42) raising, among other issues, plaintiff's lack of standing to assert claims on behalf of his father's estate.  The original motion to dismiss filed by plaintiff's mother, sister and brother-in-law (docket # 25) asserted the same defense.  In response, plaintiff agreed to dismiss the claims against Fifth Third Bank with prejudice.  (Proposed Stipulation and Order, docket # 60). Plaintiff also moved for leave to file a first amended complaint withdrawing all claims made on behalf of his father's estate.  (Motion, docket # 72).  On March 28, 2013, the court granted plaintiff leave to file his first amended complaint, which is now the operative pleading.

The first amended complaint (docket # 85) continues to assert twelve purported causes of action.[2]

_____

[2] The first amended complaint contains three claims labeled "count VII."  In this report and recommendation, those claims will be identified as "counts VII.A, VII.B, and VII.C."

• Count I is captioned "Conspiracy to Deprive." It asserts that all defendants except Freddie Mac conspired to deprive plaintiff of his interest in the Taft Road property in Nunica. The gravamen of count I is that plaintiff had an interest in the real estate as a result of a purported option to purchase, and that defendants (who were either parties to the Muskegon Probate Court proceedings or were employed by PW Services, the conservator in that case) conspired to mislead the probate judge into rendering an unjust verdict.

• Count II is captioned "Fraud." The subject-matter of count II is Tennessee real estate belonging to plaintiff's father. Count II alleges that all defendants (again excepting Freddie Mac) deprived plaintiff of his interest as a presumptive heir of this property by inducing plaintiff's father to transfer the land in 2010.

• Count III is captioned "Conspiracy to Deprive" and is addressed to plaintiff's eviction from the Wilson Road property, which belonged to his father. It is purportedly brought pursuant to a Civil-War era criminal law, 18 U.S.C. § 241, aimed at groups like the Ku Klux Klan. Plaintiff alleges that all defendants "used the legal system" to effect his eviction (which was done by judicial order entered by Judge Janet Neff in previous federal litigation). Plaintiff asserts that the defendants failed to protect the interests of his father "in order to deprive Plaintiff Ervin Joseph LaMie, Jr. of his rights to the real estate."

• Count IV is captioned "Harassment," but it purports to assert a claim under RICO. It alleges that defendants, except Freddie Mac, made fraudulent statements to the Circuit Judge in Ottawa County and the Muskegon County Probate Judge. Count IV asserts that defendants filed inappropriate pleadings, attempted to hold plaintiff in contempt of court for various reasons, procured fraudulent court orders and filed false affidavits in previous

state-court litigation. He also alleges a conspiracy to deprive him of the Wilson Road property.

•  Count V, captioned "Wrongful Eviction and Conversion," is again an effort to vindicate plaintiff's purported interest in the real property at 1140 Taft Road arising from the purchase option. It is brought against all defendants, even though Freddie Mac has nothing to do with that property. Count V alleges that defendants fraudulently obtained their judgments in the state circuit and probate courts and alleges numerous acts of fraud on the court.

•  Count VI is captioned "Breach of Fiduciary Duty" and is asserted against defendants Wright and Cereska (employees of conservator PW Services), who have not filed a motion.

•  Count VII.A, repeating a familiar theme, is captioned "Conspiracy to Deprive." It asserts that the defendant family members (plus the employees of PW Services) conspired to deprive the heirs of Ervin Joseph LaMie, Sr. (including plaintiff) of their interest in the Dyer County, Tennessee real estate owned by plaintiff's father. Plaintiff again invokes the criminal statute 18 U.S.C. § 241.

•  Count VII.B, captioned "Fraud," alleges that the parties involved in Muskegon County Probate Court proceedings perpetrated fraud on the court by filing false affidavits, committing perjury, and tendering inappropriate orders.

•  Count VII.C is captioned "Intentional Infliction of Emotional Distress." The subject matter of count VII.C is the Taft Road property. The defendants were plaintiff's adversaries in the two previous state-court cases in which plaintiff's interest in that property

was adjudicated.  Plaintiff alleges, as he did in the state Probate Court (*see* Plf. Ex. 47) that his family-member defendants entered the property and took guns and other things belonging to him.

• Count VIII is captioned "Identity Theft" and asserts that defendants (except Freddie Mac) used his father's identity to remove funds from bank accounts.  The only bank accounts mentioned in count VIII, however, belonged to plaintiff's father.  Plaintiff's attachments (*see*, *e.g.*, Ex. 48) show that this issue was raised and decided by the state Probate Court.

• Count IX, brought against all defendants, purports to allege a RICO conspiracy.  The object of the alleged conspiracy was to deplete estates, including that of plaintiff's father, to the detriment of the person and his heirs.  (Am. Compl., ¶ 199).

• Count X asserts mail, wire, and bank fraud under federal criminal statutes.  Plaintiff alleges that defendants conspired to deprive plaintiff of his interests in the Taft Road and Wilson Road real estate, as well as to deplete the assets of his father's estate.

**B.     Previous Litigation**

Plaintiff and his family have been embroiled in litigation in the Tennessee Chancery Court, the Muskegon County Probate Court, and the Ottawa County Circuit Court.  Review of several of the previous cases is necessary to resolve the motions raising the *res judicata* defense.

1.       <u>11401 Taft Road, Nunica, Michigan</u>

The real property known as 11401 Taft Road belonged to plaintiff's parents, Muriel and Ervin LaMie. Plaintiff claimed an interest as a result of an option to purchase. This claim has been litigated in the state and federal courts:

•    *Muskegon County Probate Court Conservatorship Proceedings*. Muriel LaMie was subject to a conservatorship proceeding in the Muskegon County Probate Court, initiated in 2008. *Matter of Muriel LaMie*, Case No. 08-84570-CA (Muskegon County Probate Court). Her husband Ervin LaMie, Sr. was placed into conservatorship in a related case. *Matter of Ervin Joseph LaMie, Sr.*, Case No. 08-8468 (Muskegon County Probate Court). Probate Judge Neil Mullally presided over both cases. Plaintiff was appointed as conservator for his parents, but by order entered September 17, 2009, Judge Mullally removed plaintiff and appointed PW Services as conservator for Muriel and Ervin LaMie, Sr. On September 8, 2011, Judge Mullally denied a motion by plaintiff to remove the conservator.

The Taft Road property is made up of two separate parcels: a 40-acre parcel (Permanent Parcel No. 70-04-003-400-002) and a 20-acre parcel (Permanent Parcel No. 70-04-03-300-005). At the time of the conservatorship, the real estate was owned by Ervin and Muriel LaMie, who were subject to the conservatorship proceedings.

On May 31, 2011, Judge Mullally conducted a hearing on several motions involving the subject real estate. The court entered an order dealing with plaintiff's purported option to purchase 11401 Taft Road, Nunica, Michigan, identifying both

the 20-acre and the 40-acre parcels. Judge Mullally's order granted plaintiff until June 15, 2011, to enter into a valid purchase agreement for the property, providing that the closing must take place no later than July 15, 2011. The order specifically adjudicated plaintiff's rights in the real estate as well as the purported option to purchase:

> IT IS FURTHER ORDERED that except for this right to enter into the purchase agreement with a closing on or before July 15, 2011, Ervin LaMie, Jr. shall have no interest or claim in the property and the Option to Purchase is otherwise void, of no affect and unenforceable.

> IT IS FURTHER ORDERED that a closing pursuant to the purchase agreement shall be conducted on or before July 15, 2011 or the purchase agreement shall be deemed void, unenforceable and of no affect and Ervin LaMie, Jr. shall have no further interest or claim in the property.

Plaintiff failed to enter into a purchase agreement for the property in accordance with the court's order. On August 1, 2011, Judge Mullally entered an order approving the sale of the 20-acre parcel to a third party. On November 17, 2011, Judge Mullally entered an order approving the sale of the remaining 40-acre parcel, again to a third party. By order entered September 4, 2012, Judge Mullally approved the third and final account of the conservator and reconfirmed his approval of the sale of both parcels of real estate to third parties.

The papers attached as exhibits to plaintiff's original complaint demonstrate that Muriel LaMie, the Smiths, and David LaMie participated in the conservatorship proceedings as Interested Parties. (*See e.g.,* ID# 168). The Conservator's inventories included as estate property the Taft Road real estate and the personal property located

thereon. (*See, e.g.*, ID#s 182-83; 185-88). Those exhibits also show that the court dealt with plaintiff's claims to other items of personalty, such as bank accounts and firearms, in that proceeding. (*See, e.g.,* ID#s 116-122).

- *Ervin Joseph Lamie, Jr. v. Greg Smith, et al.* - Case No. 11-02489-CH (Ottawa County Circuit Court)**.** Before the sale of the Taft Road property could be completed pursuant to Judge Mullally's order, plaintiff filed notices of lis pendens and brought a circuit court action in Ottawa County against Ervin and Muriel LaMie and Greg and Pamela Sue Smith. The subject-matter of plaintiff's complaint was 11401 Taft Road, Nunica. Plaintiff alleged the existence of an option to purchase this property and alleged claims for conversion and wrongful eviction. PW Services, Inc., the conservator for the senior LaMies, was named as a defendant. By order entered February 13, 2012, Ottawa County Circuit Judge Edward R. Post extinguished the notices of lis pendens and restrained plaintiff from recording any further notices or from filing any further lawsuits in the Ottawa County courts involving the real estate. The order imposed a total of $4,775.00 in costs and fees against plaintiff.

- *Ervin Joseph LaMie, Jr. v. Greg Smith, et al.* - Case No. 1:12-cv-201 (W.D. Mich., Maloney, C.J.). Approximately two weeks after plaintiff lost his case before Judge Post in the Ottawa County Circuit Court, he filed suit in this court against his mother, his sister Pamela and her husband Greg Smith, and PW Services, who had acted as conservator for Muriel LaMie in the state Probate Court. Plaintiff's *pro se* complaint sought to vindicate his rights in the real property located at 11401 Taft Road on a number of legal theories. The case was heavily litigated, with numerous motions

filed by all parties.  Chief Judge Maloney referred the matter to me.  I issued a report and recommendation on February 14, 2013, recommending that judgment be entered on behalf of all defendants on the grounds of *res judicata*.  I found that plaintiff's interest in the real estate had been extinguished by orders of the Muskegon County Probate Court in conservatorship proceedings and that any ancillary claims were adjudicated by the Ottawa County Circuit Court's order of February 13, 2012, which was final and unappealed.  On March 6, 2013, Judge Maloney issued an opinion and order overruling plaintiff's objections to the report and recommendation and entering judgment in favor of all defendants.  Judge Maloney's judgment also sanctioned plaintiff for vexatious litigation behavior and required him to pay the monetary sanctions levied in the state circuit court as a prerequisite to proceeding *in forma pauperis* in any future case in this court.  Plaintiff appealed, but the appeal was dismissed by order of the Sixth Circuit Court of Appeals on February 4, 2014, for want of prosecution.  (Case No. 13-1345).

2.      5494 Wilson Road, Fruitport, Michigan

Plaintiff maintained a residence at 5494 Wilson Road in Fruitport, Michigan.  The property, however, belonged to his father.  The property was encumbered by a mortgage in favor of Fifth Third Mortgage - MI, LLC.  After the mortgage loan went into default, Fifth Third Mortgage foreclosed.  On January 8, 2010, Freddie Mac purchased the property at a foreclosure sale.  The following litigation ensued regarding the Wilson Road property.

- *LaMie v. Fifth Third Mortgage - MI, LLC, et al.* - Case No. 1:11-cv-156 (W.D. Mich. Neff, J.). This action was brought by plaintiff, through counsel, against Fifth Third Mortgage, Freddie Mac, and a law firm. The case arose from the foreclosure of the mortgage on the Wilson Road property by Fifth Third Mortgage. Freddie Mac purchased the property at foreclosure sale on January 8, 2010. On January 10, 2011, after the twelve-month redemption period expired, plaintiff brought suit against defendants in the Muskegon County Circuit Court seeking to set aside the foreclosure sale and sheriff's deed to Freddie Mac. Defendants removed the case to this court, where it was assigned to District Judge Janet T. Neff. Although the real property was titled to plaintiff's father, plaintiff alleged that he was the fee simple owner pursuant to a quit claim deed dated August 26, 2008 (before the foreclosure) but not recorded until April 5, 2010 (after the foreclosure sale). According to Judge Neff's final opinion (docket # 47), plaintiff's complaint sought relief on three grounds: breach of contract, defects in published notices, and lack of interest by Freddie Mac. (docket # 47 at 2). Judge Neff dismissed the complaint against Freddie Mac for failure to state a claim upon which relief can be granted on May 21, 2012. No appeal was taken.

- *Federal Home Loan Mortgage Corp. v. LaMie*, Case No. 1:11-cv-577 (W.D. Mich., Neff, J.). Freddie Mac initiated summary eviction proceedings in the 60th District Court for Muskegon County to obtain possession of the Wilson Road property. Plaintiff filed an answer and counterclaim, after which the matter was removed to this court, again assigned to Judge Neff. The counterclaim against Freddie Mac

contained allegations similar to those asserted in the previous action: (1) a demand to set aside the sheriff's deed to Freddie Mac; (2) a claim that the foreclosure sale notice was defective; (3) a claim challenging Freddie Mac's title as fraudulent; (4) a quiet title action; and (5) a claim for mental distress arising from Freddie Mac's allegedly fraudulent conduct. (Answer, Affirmative Defenses, and Counterclaims, ID#s 16-28). After Judge Neff entered judgment in the previous case, Freddie Mac moved for summary judgment on the ground of *res judicata*. The matter was referred to Magistrate Judge Ellen Carmody, who conducted a hearing on the motion on November 27, 2012. (Plaintiff filed the present lawsuit on the same day as that hearing.) On January 15, 2013, Judge Carmody issued a report and recommendation finding that plaintiff's claims against Freddie Mac were barred by *res judicata*. (docket # 29). On February 27, 2013, District Judge Janet Neff issued an opinion and order adopting the report and recommendation, over plaintiff's objections. (docket # 36). Judgment was entered in favor of Freddie Mac and against plaintiff on February 27, 2013. On February 26, 2014, Judge Neff issued a Writ of Restitution extinguishing any possessory interest that plaintiff might have had in the Wilson Road property and directing the County Sheriff to restore possession to Freddie Mac.

Plaintiff appealed to the Sixth Circuit Court of Appeals. (Case No. 13-1267). On November 13, 2013, the Court of Appeals issued a three-page order denying plaintiff leave to appeal *in forma pauperis*. The court recited the history of litigation concerning the Wilson Road property, finding that *res judicata* barred plaintiff's

claims.  The court determined that an appeal would not be taken in good faith.

Plaintiff paid the filing fee, and the case is now pending on appeal.

## Discussion

### I.     Res Judicata

Defendants have raised the previous federal and state judgments as a bar to plaintiff's

claims.  Judge Neff has already held that similar claims against Freddie Mac involving the Wilson

Road property, raised in case no. 1:11-cv-577, were barred by the previous federal judgment in case

no. 1:11-cv-156.  Chief Judge Maloney has already held that the Muskegon County Probate Court

judgment barred subsequent claims against PW Services, Muriel LaMie and Pamela Sue and Greg

Smith involving the Taft Road property.  Plaintiff's present claims are substantially identical to those

previously rejected on *res judicata* grounds, although plaintiff has dressed them in new legal

theories.  Review of the records in all relevant cases demonstrates that virtually all of plaintiff's

claims in this case are barred by the doctrine of claim preclusion.

### A.     Res Judicata Principles

The doctrine of *res judicata*, or claim preclusion, provides that a final judgment on

the merits of an action precludes the parties or their privies from relitigating issues that were or could

have been raised in a prior action.  *See Federated Dep't Stores, Inc. v. Mattie*, 452 U.S. 394, 398

(1981).  "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that

has never been litigated, because of a determination that it should have been advanced in an earlier

suit."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).  As Freddie Mac

relies on the preclusive effect of federal judgments, federal *res judicata* principles apply.  *Rawe v.*

*Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006). As articulated by the Sixth Circuit, federal *res judicata* has four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Id.* (quoting *Cain v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).

Defendants Muriel LaMie, Greg and Sue Smith, and David LaMie rely on the preclusive effect of both federal and state judgments. The preclusive effects of a state judgment in federal court are governed by the Full Faith and Credit Act, 28 U.S.C. § 1738. The Act requires that federal courts give the same preclusive effect to a state court judgment that a court of the state in which the judgment was rendered would accord the judgment. *See Migra*, 465 U.S. at 80-81; *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006); *Heyliger v. State Univ. and Community College Sys. of Tenn.*, 126 F.3d 849, 851-52 (6th Cir. 1997). A federal court looks to the law of the state where the judgment was issued to determine the extent of the preclusive effect of the prior state court judgment. *Heyliger*, 126 F.3d at 851-52. Michigan law requires a court to apply claim preclusion if: (1) there was a prior and final decision on the merits; (2) the parties in both lawsuits are the same; and (3) the matter in the second case was, or could have been, resolved in the first lawsuit. *Abbott v. Michigan*, 474 F.3d 324, 331 (6th Cir. 2007); *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Once the three elements are met, claim preclusion will bar "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Abbott*, 474 F.3d at 331; *see Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001). It also bears emphasis, and the case law

-16-

confirms, that these same preclusion standards and principles apply with full force to the determinations of Michigan probate courts. *See, e.g., Humphrey v. Detroit Bank & Trust Co. (In re Estate of Humphrey)*, 367 N.W.2d 873, 881 (Mich. Ct. App. 1985); *accord, Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 849-50 (6th Cir. 2006).

### B.     Effect of Prior Judgments

#### 1.     Freddie Mac

*Res judicata* provides almost a complete defense to Freddie Mac in this case. With one exception, all claims against Freddie Mac arise from its purchase of the Wilson Road property and plaintiff's subsequent eviction as a tenant.[3] Plaintiff's rights in the Wilson Road property were the subject of *LaMie v. Fifth Third Mortgage - MI, LLC*, case no. 1:11-cv-156, a case decided by Judge Janet Neff of this court. Plaintiff's complaint, filed by a retained attorney, challenged the validity of the foreclosure on a number of legal theories. By opinion entered May 21, 2012, Judge Neff found that plaintiff's complaint failed to state any viable legal claim. (Op. at 11, docket # 47). The Wilson Road property was again the subject of *Federal Home Loan Mortgage Corp. v. LaMie*, case no. 1:11-cv-577, also heard by Judge Neff. The case began in 60th District Court as a summary eviction proceeding filed by Freddie Mac after the owner's redemption period expired. Plaintiff filed a counterclaim in which he again alleged that the foreclosure was invalid, that Freddie Mac's purchase at a sheriff's sale should be set aside, and that Freddie Mac was guilty of fraudulent conduct. On February 27, 2013, Judge Neff issued an opinion and order dismissing all claims

---

[3] The exception is count V, which relates to the Taft Road property. Freddie Mac is named as a defendant, but no substantive allegations are made against it. The record clearly indicates that Freddie Mac had nothing to do with the Taft Road property.

against Freddie Mac on the ground of *res judicata*. On February 26, 2014, Judge Neff issued a writ of restitution on Freddie Mac's original complaint, which granted Freddie Mac possession of the Wilson Road property.

Plaintiff asserts claims against Freddie Mac involving the same Wilson Road property in several counts of the amended complaint in this case. Count III alleges that Freddie Mac and other defendants conspired to send him notices to quit and to evict him, despite the fact that he had a quit claim deed to the Wilson Road property. He specifically includes within the scope of the conspiracy the summary possession proceedings heard and decided by Judge Neff. (Am. Compl. ¶ 63). In addition to monetary damages, he specifically demands possession of the Wilson Road home and an order extinguishing all claims by Freddie Mac against the property. Count IV alleges that Freddie Mac and others conspired to deprive plaintiff of his home at 5494 Wilson Road and engaged in fraudulent and corrupt practices to do so. Count IX purports to be a RICO claim and specifically alleges that defendants deprived plaintiff of his home on Wilson Road. (¶ 213). Count X attempts to plead a civil claim for wire, bank, and mail fraud and includes allegations regarding the Wilson Road property.

Freddie Mac has satisfied all of the prerequisites for a finding of claim preclusion arising from the previous two federal judgments. First, both cases were terminated by a final judgment on the merits. Judge Neff's judgment in case no. 1:11-cv-156 is final and was not appealed. Judge Neff's judgment in case no. 1:11-cv-577, although presently on appeal, is final for purposes of *res judicata*. The pendency of an appeal does not rob a federal judgment of its finality for purposes of *res judicata*. *See Smith v. S.E.C.*, 129 F.3d 356, 362 n.7 (6th Cir. 1997) (*en banc*). Second, this case and the two previous cases are between identical parties. Third, the issues in the

present case either were litigated or should have been litigated in the prior two actions. The subject matter of all of plaintiff's claims concerns his loss of possession of the Wilson Road property as a result of Freddie Mac's purchase of the property at a sheriff's sale and this court's granting of Freddie Mac's motion for the issuance of a writ of restitution. Judge Neff expressly found that plaintiff had no further interest in the Wilson Road property. If plaintiff had any other legal theory, either for damages or for recovery of the property, he should have brought it in one of the two previous cases. Any claim plaintiff had could and should have been pleaded in one of the two earlier cases. Finally, there is an identity of causes of action. When analyzing the *res judicata* effect of federal judgments, the Sixth Circuit applies the "same transaction" test. *See Wilson v. Strickland*, 333 F. App'x 28, 30-31 (6th Cir. 2009). Under this test, "[w]here the two causes of action arise from the 'same transaction or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Holder v. City of Cleveland*, 287 F. App'x 468, 471 (6th Cir. 2008) (quoting *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006)). Thus, the focus is on the facts creating the right of action and not the legal label chosen by plaintiff. *See Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981); *accord, Bernstein v. Bankert*, 733 F.3d 190, 226-27 (7th Cir. 2013) (even if two claims are based on different legal theories, they are the "same claim" for *res judicata* purposes if they arise from the same facts).

Plaintiff has engaged in a clear pattern of duplicative litigation against all his perceived enemies. When he loses a case, he merely files a new one, asserting essentially the same claim with new legal trappings. This is precisely the sort of conduct that the doctrine of *res judicata* was intended to prevent. Freddie Mac is entitled to prevail on the defense of claim preclusion on

counts III, IV, IX and X, all of which seek to relitigate plaintiff's claims to the Wilson Road property.

## 2. Individual Defendants

Defendants Muriel LaMie, David LaMie, and Pamela Sue and Greg Smith are named as parties in all counts, except count VI. Counts I, IV, V, VII.B and VII.C pertain to the Taft Road property or personal property involved in the Probate Court case. Counts II and VII.A. pertain to property located in Tennessee that belonged to plaintiff's father. Count VIII pertains to bank accounts and other personal property that were the subject matter of Probate Court proceedings in Muskegon County. The RICO claim in count IX is obviously directed to the Muskegon County Probate Court proceedings. The fraud claim in count X appears to cover all property in which plaintiff claims an interest. The principles of *res judicata* bar plaintiff's claims against his family members alleged in counts I, IV, V, VII.B, VII.C, VIII, IX, and X.

As Chief Judge Maloney found in *LaMie v. Greg Smith*, case no. 1:12-cv-201, any interest that plaintiff had in the Taft Road property was extinguished by orders of the Muskegon County Probate Court in conservatorship proceedings involving both his parents, who were the record owners of that property. (Op. at 4, docket # 161). The court also found that plaintiff's claims for removal of his personal and business property were or could have been resolved in the Probate Court litigation. (*Id.*). Plaintiff asserts in the present case, once again, claims to the Taft Road property and to personal property that was allegedly taken from it. Chief Judge Maloney has already found that the Probate Court judgment has preclusive effect, such that any further claim to the real or personal property must be deemed barred. Michigan, like the Sixth Circuit, applies the "same

-20-

transaction" test in determining the scope of claims barred by a previous judgment. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir. 2010). *Res judicata* "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Abbott v. Michigan*, 474 F.3d 324, 333 (6th Cir. 2007) (applying Michigan law). "Whether a factual grouping constitutes a transaction for purposes of *res judicata* is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." *Adair v. Michigan*, 680 N.W.2d 386, 398 (Mich. 2004). In the present case, it is patently obvious that plaintiff's claims against defendants Muriel LaMie, David LaMie and Pamela Sue and Greg Smith arise from precisely the same fact pattern as was litigated in the state Probate Court proceedings, in which they participated as Interested Parties. For that matter, they arise from the same series of transactions that plaintiff asserted without success in *LaMie v. Smith*, case no. 1:12-cv-201, in this court.

Plaintiff's claims against Muriel LaMie, David LaMie and Pamela Sue and Greg Smith are clearly barred by claim preclusion arising from the Probate Court judgment, as the parties are the same, the previous judgment was on the merits, and the matter in this case was or could have been resolved in the first lawsuit. *See Abbott*, 474 F.3d at 331. This result is not undermined by plaintiff's allegations that the judgment in the Probate Court proceeding was somehow procured by fraud. Federal courts have expressed hostility to the proposition that a mere allegation that a previous judgment was obtained by "fraud on the court" defeats the defense of *res judicata*. *See, e.g., Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000). The federal courts will not entertain a collateral attack on a state judgment on the basis of "fraud on the court" in an action for

damages. Such a claim is inconsistent with the facts underlying the prior judgment. *See, e.g., Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1274 (10th Cir. 1995); *Chewning v. Ford Motor Co.*, 35 F. Supp. 2d 487, 489 (D.S.C. 1998). This has been the rule in the Sixth Circuit for over 100 years. *See Kansas City F.T.S. & M.R. Co. v. Morgan*, 76 F. 429, 435 (6th Cir.1896) (not permissible for a party to attack a judgment in a collateral proceeding on account of fraud). The proper avenue for relief by a party who believes that a previous judgment was procured by fraud on the court is for the party to bring a post-judgment motion or an independent action in equity to vacate the judgment. *See Gleason v. Jandruco*, 860 F.2d 556, 558 (2d Cir. 1988); *Chewning*, 35 F. Supp. 2d at 491. The universal rule in the federal courts, however, is that an equitable action to set aside a judgment may only be heard by the court whose judgment is challenged. *See Weisman v. Charles E. Smith Mgmt., Inc.*, 829 F.2d 511, 514 (4th Cir. 1987); *accord Sessley v. Wells Fargo Bank, N.A.*, No. 2:11-cv-348, 2012 WL 726749, at * 9 (S.D. Ohio Mar. 6, 2012) (if plaintiff believed that a state court foreclosure judgment was obtained by fraud on the state court, plaintiff's remedy was by way of motion for relief filed in the state court, not by way of a collateral attack in federal court); *see generally* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2868 at 568-69 (3d ed. 2012). Thus, if plaintiff believes that the Probate Court judgment was induced by fraud, his remedy is to seek relief in the Probate Court, not to bring a collateral attack in the federal court.

Claim preclusion therefore provides a complete defense to defendants Muriel LaMie, David LaMie and Pamela Sue and Greg Smith for a number of counts. Count I expressly alleges a conspiracy to deprive plaintiff of the Taft Road property, again asserting that he had a valid option to purchase the property. That option was expressly adjudicated in the Probate Court proceedings

and found to be null and void. The allegations of Count I seek to challenge the regularity of the probate proceedings, which constitutes an improper collateral attack on the final judgment of the state court. Count IV, captioned "Harassment," alleges fraud in connection with the Muskegon County and Ottawa County state court proceedings, claims that plaintiff could and should have brought in those proceedings.

Count V alleges wrongful eviction from the Taft Road property and conversion of personal property located there. Plaintiff's own exhibits show that these claims were actually presented in the state Probate Court proceedings. Count VII.B, captioned "Fraud," is a direct challenge to the validity of the Probate Court judgment, in which plaintiff alleges, among other things, that counsel for the opposing parties filed false affidavits and tendered improper orders to the court. Count VII.C, captioned "Intentional Infliction of Emotional Distress," concerns personal property. Plaintiff's own exhibits (*see, e.g.,* Plf. Ex. 47, 48) demonstrate that these claims were the subject of Probate Court proceedings, as Chief Judge Maloney had already held in a previous case (*LaMie v. Smith*, Case No. 1:12-cv-201 (Op. at 4, docket # 161)). The purported RICO count, IX, alleges a conspiracy to deprive plaintiff's father of his interests in the Taft Road real estate through fraudulent conservatorship proceedings. Count X alleges wire, mail, and bank fraud in connection with all property in which plaintiff claims an interest. These claims all clearly arise from the same transactions involved in the state-court litigation and should have been raised there. The state courts had jurisdiction to hear all of the claims asserted in this case, even the RICO claims. *See Tafflin v. Levitt*, 493 U.S. 455 (1990) (state courts have concurrent jurisdiction over RICO claims).

## II.    Failure To State A Claim

All defendants (other than Paul Wright and Rachel Cereska) move for dismissal under Fed. R. Civ. P. 12(b)(6) for failure of the amended complaint to state a claim upon which relief can be granted. Although the amended complaint is long on conclusory allegations, it is virtually devoid of facts necessary to raise a plausible claim against any defendant. To the extent that plaintiff's present claims are not barred by *res judicata*, they fail to state a claim upon which relief can be granted.

### 1.    Count I

Count I attempts to allege a conspiracy among all defendants except Freddie Mac to deprive plaintiff of his interest in the Taft Road real estate. The only basis alleged for this claim is the purported option to purchase the real estate, which the Muskegon County Probate Court has already adjudicated to be void and unenforceable. As all defendants named in count I were parties to the Probate Court proceedings, this is a complete defense.

### 2.    Count II

Count II purports to assert a fraud claim against all defendants except Freddie Mac. The subject matter of count II is the transfer of Tennessee real estate owned by plaintiff's father, Ervin Joseph LaMie, Sr. Plaintiff asserts a claim to this property as his father's heir. This legal theory is inarguable. The alleged transfer took place in the year 2010, when Ervin Joseph LaMie, Sr. was still alive. At that time, neither plaintiff nor any of Mr. LaMie's other children had any interest in his real estate as an "heir." It is a fundamental tenet of Anglo-American jurisprudence that the living have no heirs ("*Nemo est haeres viventis*"). *See Harmon v. Harmon*, 206 S.W. 333, 334

(Tenn. 1918); *James E. Scripps' Corp. v. Parkinson*, 153 N.W. 29, 31 (Mich. 1915); *see also United States v. Four Hundred Seventy Seven (477) Firearms*, 698 F. Supp. 2d 894, 900 (E.D. Mich. 2010) ("Michigan adheres to the black letter rule, *nemo est haeres viventis*, meaning 'no one can be an heir during the life of an ancestor.'") (quoting *In re Estate of Finlay*, 424 N.W.2d 272, 277 n.12 (Mich. 1988)). "Expectations or hopes of succession, whether testate or intestate, to the property of a living person do not vest until the death of that person." *Irving Trust Co. v. Day*, 314 U.S. 556, 562 (1942). A beneficiary has no legally protected interest in or entitlement to a person's property while the person is still alive. *James E. Scripps' Corp.*, 153 N.W. at 31. At most, such a potential beneficiary has a mere "expectancy," which affords no legal rights. *In re Estate of Finlay*, 424 N.W.2d at 277; *see Birmingham v. Cotton*, No. 3:08cv671, 2010 WL 3925128, at * 5 (D. Conn. Sept. 30, 2010) (applying Connecticut law). Such an expectancy has no attributes of property, and the interest to which it relates is "at the time nonexistent and may never exist." *Birmingham*, 2010 WL 3925128, at * 5 (quoting *Krause v. Krause*, 174 Conn. 361, 365 (1978)); *accord Caple v. Parman Mortg. Assoc.*, No. 11-cv-3268, 2012 WL 4511445, at * 4 (E.D.N.Y. Oct. 1, 2012) (children of mortgagor lack standing to challenge foreclosure as beneficiaries of their living parents' estate).

Simply put, plaintiff had no legal interest in the Tennessee real estate transferred in the year 2010. Count II fails to state a claim against any party.[4]

---

[4] Plaintiff's original complaint sought to bring suit on behalf of his father's estate. In response to motions to dismiss, plaintiff was allowed to amend his complaint. The amended complaint omitted express allegations that plaintiff was proceeding on behalf of his father's estate, but continues to allege claims that clearly belong to plaintiff's father and not to plaintiff himself.

3.     Count III

Count III alleges a conspiracy among all defendants to deprive plaintiff of his home on Wilson Road, which he lost when Fifth Third Mortgage foreclosed on the mortgage granted by plaintiff's father.  Plaintiff claims an interest in this real estate on the basis of an unrecorded deed. Count III fails to state a claim against any party.

Plaintiff expressly grounds count III on a criminal statute, 18 U.S.C. § 241. Defendants are correct that this statute, known as the Ku Klux Klan Act, is criminal in nature and creates no civil cause of action.  *See Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008); *Abner v. General Motors*, 103 F. App'x 563, 566 (6th Cir. 2004); *accord Cok v. Consentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Dunn-Mason v. J.P. Morgan Chase Bank, N.A.*, No. 11-cv-13419, 2013 WL 5913684, at * 13 (E.D. Mich. Nov. 1, 2013) (collecting cases).

Beyond this, count III fails to state a claim against any defendant.  As noted in section I above, *res judicata* provides Freddie Mac with a complete defense.  The remaining defendants, all members of plaintiff's family, are not alleged to have done anything, except to "conspire" with Freddie Mac and its attorneys to effect the eviction.  Under Michigan law, a charge of conspiracy, standing alone, is not actionable.  The gravamen of a conspiracy charge is not the combination between actors, but the wrongful acts causing damage.  *See Coronet Dev. Co. v. FSW, Inc.*, 150 N.W.2d 809, 812 (Mich. 1967); *Roche v. Blair*, 9 N.W.2d 861, 863 (Mich. 1943).  In other words, the allegation of conspiracy by itself means nothing.  Rather, the law requires establishment of a common plan among the defendants and that the individual defendants charged with responsibility acted with intent to commit the tort.  *See Rosenberg v. Rosenberg Bros. Special Acct.*, 351 N.W.2d 563, 569 (Mich. Ct. App. 1984).  It is well settled that conspiracy claims must be pled with some

degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). The Supreme Court itself has held that claims of conspiracy must be supported by allegations of fact that raise a "plausible suggestion of conspiracy," not merely a "possible" one.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 566 (2007).

The idea that Freddie Mac would conspire with plaintiff's elderly mother and siblings in Freddie Mac's efforts to gain control of family property is, in a word, delusional.[5]  Beyond that, plaintiff merely recites the course of proceedings leading to his eviction and asserts that his family members somehow conspired to bring about this result.  Such conclusory allegations are insufficient under *Twombly*.

### 4.    Count IV

Count IV is brought against all defendants and purports to be grounded on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c).  That statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interest or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  A violation of the statute requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  A

---

[5] Since plaintiff is proceeding *in forma pauperis*, his pleading may be dismissed as frivolous or malicious if its factual allegations are fanciful, fantastic or delusional.  *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).  The idea of a conspiracy between Freddie Mac and plaintiff's elderly mother and his siblings fits neatly within this description.

plaintiff must allege each element to properly state a claim.  *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (2012).

Count IV does not come close to alleging a RICO claim.  No enterprise is identified. No racketeering activity is alleged, and no pattern is even suggested.  A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other.  18 U.S.C. § 1961(5).  While the statute defines the minimum number of acts necessary to establish a pattern, the Supreme Court has held that a minimum of two acts is not necessarily sufficient.  In order to show a "pattern" of racketeering activity, a plaintiff must show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989).  This requirement is called the "relationship plus continuity" test.  *Heinrich*, 668 F.3d at 409.  Needless to say, count IV fails to allege any continuity as required by Supreme Court precedent, of either the closed-ended or open-ended variety. Rather, plaintiff alleges a number of complaints and criticisms about the proceedings in the Muskegon County Probate Court.  Count IV is an utterly inadequate attempt to allege a RICO cause of action.  To the extent that count IV is not barred by *res judicata*, it fails to state a claim.

5.      Count V

Count V is brought against all defendants arising from plaintiff's loss of the Taft Road property.  Plaintiff's interest in this property, if any, was extinguished by the judgment of the Muskegon County Probate Court.  That judgment provides defendants Muriel LaMie, David LaMie and Pamela Sue and Greg Smith with a complete defense, under principles of *res judicata*.

Freddie Mac was not a party to the Probate Court action. The doctrine of claim preclusion therefore does not apply to the claims against it. But count V is insufficient to allege any cognizable claim against Freddie Mac arising from the events surrounding plaintiff's loss of his interest in the Taft Road property. It is patently obvious that Freddie Mac had nothing to do with plaintiff's loss of the Taft Road property, nor does count V contain any allegation that Freddie Mac was somehow involved. Other than being mentioned in the introduction, Freddie Mac is not alleged to have done anything regarding the Taft Road property. A claim that merely names a party in the caption but fails to make substantive allegations of wrongdoing is subject to dismissal as frivolous. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1994); *Cameron v. Howes*, No. 1:10-cv-539, 2010 WL 3885271, at * 6 (W.D. Mich. Sept. 28, 2010) (collecting cases).

Count V purports to be based on 18 U.S.C. § 241, which does not provide a federal cause of action. Plaintiff also invokes the common law and statutory law of Michigan regarding conversion, but his complaint is devoid of any facts indicating that Freddie Mac converted any personal property. Count V simply fails to state a claim against Freddie Mac.

6.    Count VI

Count VI appears to be directed only to defendants Wright and Cereska, who were employed by PW Services in its capacity as conservator. None of the moving defendants seem to be involved in count VI. Neither Wright nor Cereska has filed a dispositive motion. Count VI therefore survives the present motions to dismiss or for summary judgment.

7.    Count VII.A

Count VII.A is brought against all defendants, except Freddie Mac.  It alleges that the individual defendants "have conspired to allow and turn over the real estate located in Dyer's County, Tennessee."  Plaintiff alleges that the defendants allowed the real estate, which was owned by plaintiff's father, to be sold "at the detriment of the heirs of the estate."  (Am. Compl. ¶ 131).

Plaintiff again grounds his conspiracy claim on 18 U.S.C. § 241, a criminal statute that will not support a civil cause of action.  Viewed as a claim for conspiracy under Michigan law, count VII.A fails to state a claim upon which relief can be granted.  As noted above, plaintiff had no cognizable interest in the Tennessee real estate owned by his father.  The mere fact that he was a putative heir does not give him a claim arising from the alienation of the real estate in the year 2010, years before his father's death.  Count VII.A states no claim under either federal or state law arising from the transfer of property in Tennessee belonging to plaintiff's father.

8.    Count VII.B

Count VII.B attempts to allege a claim for conspiracy to commit fraud against all defendants except Freddie Mac.  Plaintiff alleges that the defendants "have conspired to commit fraud by entering fraudulent documents in the court cases against the Plaintiff in order to further their personal financial gains against the Plaintiff for exposing their fraud."  (Am. Compl. ¶ 138). Plaintiff then alleges in vague fashion that certain documents entered in the Probate Court conservatorship were fraudulent.

Count VII.B is directed to the regularity of the Muskegon County Probate Court proceedings, in which plaintiff was the losing party.  It represents an illicit collateral attack on the

finality of the Probate Court judgment and is barred by *res judicata*, as explained in section I above. With regard to defendant David LaMie, plaintiff's fraud claims also arise from allegedly false testimony given by David LaMie in the Probate Court proceedings. (Am. Compl. ¶¶ 158-59). Michigan law grants witnesses immunity from suit on claims arising from the truth or falsity of their testimony. *See Daoud v. De Leau*, 565 N.W.2d 639, 648-49 (Mich. 1997). Therefore, to the extent that this count is not barred by *res judicata*, it asserts a claim against a clearly immune defendant, and is subject to dismissal on that ground. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

        9.      <u>Count VII.C</u>

Count VII.C is captioned "Intentional Infliction of Emotional Distress." It is brought against all defendants except Freddie Mac. The subject matter of count VII.C is again plaintiff's loss of the Taft Road property, in which he claimed an interest on account of a purported option, and his loss of certain personal property. Plaintiff's own allegations and exhibits make it clear that the very same claims were presented to the Muskegon County Probate Court. Plaintiff further alleges that defendant David LaMie threatened to shoot him, but then makes it plain that Probate Judge Mullally entered an order restraining David LaMie from going near plaintiff on account of this incident. (Am. Compl. ¶ 170). Plaintiff's own allegations and exhibits demonstrate that these claims were already adjudicated.

        10.     <u>Count VIII</u>

Count VIII is captioned "Identity Theft." Plaintiff invokes the federal identity theft statute, 18 U.S.C. § 1028, a criminal law. The federal courts hold that section 1028 is purely criminal in nature and creates no private cause of action. *See Garay v. U.S. Bancorp*, 303 F. Supp.

2d 299, 302 (E.D.N.Y. 2004); *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998); *accord Flander v. Dep't of Public Safety*, No. 3:13cv4576, 2014 WL 238652, at * 2 (N.D. Tex. Jan. 22, 2014); *Dorr v. Ford Motor Co.*, No. 10-cv-13822, 2011 WL 5857886, at * 9 (E.D. Mich. Sept. 27, 2011).

In addition to lacking any legal basis in federal law, count VIII is devoid of factual allegations that might support a plausible state tort claim. The principal subject matter of plaintiff's claim concerns a bank account owned by his father. The allegations of count VIII, accepted as true, do not indicate that plaintiff had any interest in his father's bank account. Beyond this, plaintiff makes vague allegations concerning a missing driver's license, allegations insufficient to establish a claim of identity theft. Finally, plaintiff's own allegations and exhibits establish that the Probate Court adjudicated these claims. (Am. Compl. ¶ 195 and Ex. 46).

11. <u>Count IX</u>

Count IX purports to allege a RICO claim against all defendants. Plaintiff's RICO claim suffers from numerous, fatal defects. Discussion of only the major flaws should be sufficient.

First, plaintiff's RICO claim is clearly barred by *res judicata*, as discussed above. The gravamen of plaintiff's RICO claim is that the defendants conspired to defraud individuals of their interests in real estate. To the extent that it is intelligible, plaintiff's theory seems to be that PW Services, in concert with the other defendants, goes about dismantling the estates of persons adjudged incompetent, depleting the estate to the detriment of the person's heirs. (Am. Compl. ¶ 199). Plaintiff specifically alleges that the purported RICO enterprise "has depleted the estate of Ervin J. LaMie, Sr.," and by doing so thus depleted the estate of plaintiff himself. (*Id.* ¶ 202).

Plaintiff alleges that defendants, in furtherance of this conspiracy, filed false and fraudulent documents in the Muskegon County probate matter.

It should be clear that this purported RICO claim is a thinly veiled collateral attack on the Probate Court conservatorship proceedings, in which the court adjudicated plaintiff's claims to the Taft Road property. Furthermore, the RICO claim is a collateral attack against the judgments entered by Judge Neff, as plaintiff's loss of his "interest" in the Wilson Road property is also thrown into the alleged conspiracy.

Moving beyond *res judicata*, plaintiff's RICO claim fails for lack of an allegation of proximate cause. The RICO statute, 18 U.S.C. § 1964(c), requires that plaintiff plead and prove injury "in his business or property" in order to bring a civil action. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 563 (6th Cir. 2013). The injury to business or property must be proximately caused by the alleged RICO violation. *See Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Thus, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. The RICO conspiracy alleged by plaintiff, however, is not even directed towards plaintiff's own property. Plaintiff alleges only that the defendants conspired to deplete estates, referring particularly to the estate of plaintiff's father. The allegations of plaintiff's complaint, accepted as true, do not establish that he had any interest in his father's property. Harm flowing from wrongs visited upon third parties will not support a RICO claim. *Holmes*, 503 U.S. at 268-69. The Sixth Circuit has squarely held that the heirs of an estate have no RICO claim arising from wrongs allegedly perpetrated against the decedent. *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992). Plaintiff's theory of harm flowing from depletion of his father's estate is untenable under *Holmes* and *Galbreath*.

12.　　<u>Count X</u>

　　　　Count X purports to be brought under three federal statutes criminalizing certain types of fraud: 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud). None of these criminal statutes will support a private cause of action for damages. *See Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178 (6th Cir. 1979) (mail fraud statute); *accord Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (mail and wire fraud statutes); *Thornton v. Rozen Constr.*, No. 1:10-cv-73, 2010 WL 882824 (W.D. Mich. Mar. 8, 2010) (wire, mail, and bank fraud statutes); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005) (no private right of action for bank fraud under 18 U.S.C. § 1344).

　　　　Viewed as a state-law fraud action, count X is subject to dismissal on *res judicata* grounds, as it merely represents a rehash of the allegations raised in previous counts with regard to plaintiff's loss of the Wilson Road and Taft Road real properties or certain bank accounts and items of personal property, all of which have been adjudicated in previous cases.

## III.　　**Sanctions**

　　　　Defendants have requested the imposition of sanctions against plaintiff. The sanctions requested by his family members include jailing plaintiff for his conduct. Although defendants seek clearly excessive sanctions, plaintiff has just as clearly abused his privilege of proceeding *in forma pauperis* in filing duplicative litigation, to the detriment of the defendants and the court system. An award of reasonable sanctions is warranted.

　　　　In *Lamie v. Smith*, case no. 1:12-cv-201, Chief Judge Maloney ordered that plaintiff could not proceed *in forma pauperis* in the federal courts until he had first satisfied the Ottawa

County Circuit Court judgment entered against him in one of his previous lawsuits.  (Op. & Order, docket # 161).  That order, entered on March 6, 2013, was insufficient to deter plaintiff from filing a frivolous amended complaint in the present case, only three weeks later.

Proceeding *in forma pauperis* is a privilege and not a right.  *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998); *see Treff v. Galetka*, 74 F.3d 191, 197 (10th Cir. 1996)( "Leave to proceed without prepayment of fees and costs is a privilege, not a right" and courts have discretion to revoke that privilege when it no longer serves its goals).  It is well established that federal courts have inherent powers to impose appropriate sanctions to deter future frivolous lawsuits and vexatious relitigation of the same lawsuit.  *See Cauthon v. Rogers*, 116 F.3d 1334, 1337 (10th Cir. 1997); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480, at * 3 (6th Cir. Mar. 15, 1995); *Colbert v. Cincinnati Police Dep't*, 867 F. Supp. 2d 34, 36 (D.D.C. 2011).

Every paper filed with the Clerk of this court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources.  A part of the court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.  *See In re McDonald*, 489 U.S. 180, 184 (1989); *see also In re Whitaker*, 513 U.S. 1, 3 (1994); *In re Sindram*, 498 U.S. 177, 179-80 (1991) ("The goal of fairly dispensing justice . . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous [claims].").  "'Frivolous, vexatious, and repeated filings by *pro se* litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit . . . .'" *Levy v. Bloomingdales, Inc.*, No. 1:13-cv-128, 2014 WL 48112, at * 5 (S. D. Ohio Jan. 7, 2014) (quoting *United States ex rel. Verdone v. Circuit Court for Taylor County*, 73 F.3d 669, 671 (7th Cir. 1995)); *see Thomas v. Ouachita Corr. Ctr.*, No. 3:12-cv-687, 2012 WL 1856514, at * 2 (W.D. La. May 1,

2012). "It is well-settled that a plaintiff's *pro se* status does not give him a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 900 (5th Cir. 2009).

Federal district courts necessarily have considerable discretion in drafting orders restricting a litigious party's access to courts. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (given the plaintiff's "near obsession regarding his former employer, injunctive means [was] the only means that offer[ed] any chance of preventing further harassment"); *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993); *see also White v. McKinna*, 510 F. App'x 684, 687 (10th Cir. 2013); *Haddad v. Mich. Nat'l Bank*, No. 1:09-cv-1023, 2010 WL 2384535, at * 2 (W.D. Mich. June 10, 2010) (listing a "variety of sanctions" federal courts have imposed to curb abusive lawsuits). Both the Supreme Court and the Sixth Circuit have reaffirmed the district court's inherent authority to take action to prevent abuse of the judicial system. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-45 (1991); *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997); *accord First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). A prerequisite to the exercise of such power is a finding that a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Big Yank*, 125 F.3d at 313; *See Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003). The concept of bad faith is an objective one. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). A claim is brought in bad faith if it is frivolous. *Id.*; *see Nabkey v. Gibson*, 923 F. Supp. 117, 122 (W.D. Mich. 1990). Objectively, the present lawsuit was filed vexatiously and in bad faith. Without repeating the previous analysis of plaintiff's claims, I will merely note that plaintiff has relentlessly asserted rights

in the parcels of real estate that were never titled to him, and that adverse judgments of the state and federal courts have not deterred him from asserting the same claims with different labels.

Plaintiff's history of vexatious litigation in the state and federal courts -- all arising from the same imagined causes of action -- requires a meaningful deterrent. The state-court record shows that plaintiff was sanctioned monetarily, without apparent effect. He has failed to pay the sanctions, and his pattern of vexatious litigation continues despite the state court's monetary sanctions. Different measures are therefore warranted. Where, as here, a litigant has a clear pattern of abusing the privilege of proceeding *in forma pauperis*, the court may deny him the privilege of initiating any further actions *in forma pauperis*. *See Martin v. Dist. of Columbia Ct. of App.*, 506 U.S. 1, 3 (1992); *Reneer v. Sewell*, 975 F.2d 258, 260-61 (6th Cir. 1992); *Colbert v. Cincinnati Police Dep't*, 867 F. Supp. 2d at 36-37; *accord Campbell v. Clarke*, 481 F.3d 967, 969-70 (7th Cir. 1997).

I recommend that plaintiff's privilege of proceeding *in forma pauperis* in the federal courts be revoked, but only with regard to future lawsuits (or appeals) involving one or more of the parties to this case or involving the Taft Road or Wilson Road properties. That sanction would have the beneficial effect of closing the books on plaintiff's longstanding pursuit of his family members, without foreclosing meritorious claims that may arise against others in the future. It will also put to rest plaintiff's repetitive claims against Freddie Mac regarding real estate that was sold years ago after foreclosure.

## Recommended Disposition

For the foregoing reasons, I recommend that all pending motions by defendants to dismiss (docket #s 25, 70, 96) and all motions for summary judgment (docket #s 77, 92) be granted, on the ground that plaintiff's claims are barred by *res judicata* or fail to state a claim upon which relief can be granted. I further recommend that all motions for sanctions (docket #s 53, 67, 102) be granted in part and denied in part, in that plaintiff's privilege of proceeding or appealing *in forma pauperis* should be revoked for any future case brought against any of the present defendants or regarding any interest in property at 11401 Taft Road, Nunica, Michigan, or 5494 Wilson Road, Fruitport, Michigan, or any personal property located on either parcel of real estate.

(If this recommended disposition is adopted, the case will not be closed, as all claims against defendants Wright and Cereska will remain pending.)


Dated:  March 14, 2014                                  /s/  Joseph G. Scoville
                                                        United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).